## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GEORGE CARY, individually and as the personal representative of the Estate of LILIAN CARY,<br><br>Plaintiff,<br><br>v.<br><br>NEW ENGLAND COMPOUNDING PHARMACY, INC. d/b/a NEW ENGLAND COMPOUNDING CENTER, ARL BIO PHARMA, INC. d/b/a ANALYTICAL RESEARCH LABORATORIES, AMERIDOSE LLC, MEDICAL SALES MANAGEMENT, INC., and BARRY J. CADDEN,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) CIVIL ACTION NO: _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## NOTICE OF REMOVAL

TO THE HONORABLE JUDGES AND CLERK OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS.

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1446, and L.R. 81.1, Defendants New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center ("NECC"), Ameridose LLC, Medical Sales Management, Inc., and Barry J. Cadden (collectively, "Defendants"), hereby remove the above-entitled action to this Court based upon the following supporting grounds. Defendants, appearing solely for the purpose of this removal and for no other purpose, and preserving all other defenses available to them, state as follows:

     1.     On or about October 30, 2012, an action (the "Complaint") was filed in the Trial Court for the Commonwealth of Massachusetts, Middlesex Superior Court Department,

captioned *George Cary, individually and as the personal representative of the Estate of Lilian Cary v. New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center, ARL Bio Pharma, Inc. d/b/a Analytical Research Laboratories, Ameridose LLC, Medical Sales Management, Inc., and Barry J. Cadden*, Civil Action No. 12-4299.

2. A copy of the Complaint and all other process, pleadings and orders received by Defendants are attached as Exhibit A.

3. Removal is timely under 28 U.S.C. § 1446(b), as fewer than 30 days have elapsed since the date of filing.

4. Removal of this action to this Court is permissible under the provisions of 28 U.S.C. § 1441 in that it is a civil action arising under the laws of the United States.

5. The original jurisdiction of this Court is invoked under 28 U.S.C. § 1331 in that the instant matter presents a central and substantial federal question. A question of federal law that is "substantial" or important enough warrants "the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313 (2005). Whether an issue is adequately substantial does not necessarily depend on the existence of a federal cause of action; an issue may be sufficiently substantial if it implicates an important federal interest. *Id.* An important interest is presented when a state claim necessarily involves the interpretation of federal law. *Id.* The instant matter presents such a question.

6. As alleged in the Complaint, NECC was a compounding pharmacy in the Commonwealth of Massachusetts. (Compl. ¶¶ 6, 17, 33-36). Plaintiffs in similar actions in other federal and state courts have alleged that NECC improperly operated as a pharmaceutical manufacturer. These competing allegations turn on the interpretation of conflicting federal and

2

state laws and regulations concerning the types of activities in which compounding pharmacists may engage. This distinction is critical for the determination of Plaintiff's state law claims.

7. Federal courts are in conflict over the issue. The United States Food and Drug Administration ("FDA") is authorized to enforce the federal Food, Drug, and Cosmetic Act (FDCA), thereby regulating the manufacture and sale of pharmaceuticals and certain other products. 21 U.S.C. § 301, *et seq.* In 1997, the FDCA was amended to incorporate prohibitions on certain activities traditionally engaged in by compounding pharmacies. Some of these provisions, contained in § 503A, were invalidated by the Supreme Court in *Thompson v. W. States Med. Ctr.*, 535 U.S. 357 (2002). Other provisions within § 503A, however, had not been appealed and were thus not addressed by the Court. *Thompson*, 535 U.S. at 360. Consequently, the Court left unresolved the validity of these remaining provisions within § 503A. A split among the Circuit Courts of Appeal now exists over the validity of the remaining provisions. *Compare W. States Med. Ctr. v. Shalala*, 238 F.3d 1090 (9th Cir. 2001) (Section 503A invalidated in its entirety), *with Med. Ctr. Pharmacy v. Mukasey*, 536 F.3d 383 (5th Cir. 2008) (other provisions within § 503A remain valid). The issues raised in these cases directly implicate how the law distinguishes pharmaceutical compounding from pharmaceutical manufacturing.

8. FDA has taken the position that compounding pharmacists are in fact manufacturing "new drugs":

> FDA's position is that the Federal Food, Drug, and Cosmetic Act (FDCA) establishes agency jurisdiction over "new drugs," including compounded drugs. FDA's view is that compounded drugs are "new drugs" within the meaning of 21 U.S.C. § 321(p), because they are not "generally recognized, among experts ... as safe and effective" for their labeled uses. There is substantial judicial authority supporting FDA's position that compounded drugs are not exempt from the new drug definition.

\* \* \*

> FDA maintains that, because they are "new drugs" under the FDCA, compounded drugs may not be introduced into interstate commerce without FDA approval.
>
> \* \* \*
>
> FDA regards traditional compounding as the extemporaneous combining, mixing, or altering of ingredients by a pharmacist in response to a physician's prescription to create a medication tailored to the specialized needs of an individual patient. *See Thompson v. Western States Medical Center*, 535 U.S. 357, 360-61 (2002). Traditional compounding typically is used to prepare medications that are not available commercially, such as a drug for a patient who is allergic to an ingredient in a mass-produced product drug, or diluted dosages for children.

Bellevue Pharmacy Solutions Warning Letter 1/14/2008, *available at* http://www.fda.gov/Drugs/GuidanceComplianceRegulatoryInformation/PharmacyCompounding/ucm155169.htm (last visited Nov. 1, 2012) ("Warning Letter").

9. FDA's definitions and position are in apparent conflict with other provisions of state and federal law that permit state oversight of compounding pharmacies. Recognizing this conflict, and despite the uncertainty over § 503A, FDA nonetheless adopted § 503A's definitions in theory, if not in practice:

> Through the exercise of enforcement discretion, FDA historically has not taken enforcement actions against pharmacies engaged in traditional pharmacy compounding. Rather, FDA has directed its enforcement resources against establishments whose activities raise the kinds of concerns normally associated with a drug manufacturer and whose compounding practices result in significant violations of the new drug, adulteration, or misbranding provisions of the FDCA.
>
> FDA's current enforcement policy with respect to pharmacy compounding of human drugs is articulated in Compliance Policy Guide (CPG), section 460.200 ["Pharmacy Compounding"], issued by FDA on May 29, 2002 (*see Notice of Availability*, 67 Fed. Reg. 39,409 (June 7, 2002)). The CPG identifies factors that the Agency considers in deciding whether to initiate enforcement action with respect to compounding. <u>These factors help differentiate the traditional practice of pharmacy compounding from the manufacture of unapproved new drugs</u>. They further

> address compounding practices that result in significant violations of the new drug, adulteration, or misbranding provisions of the FDCA. As stated in the CPG, "[t]he . . . list of factors is not intended to be exhaustive."

*See* Warning Letter (emphasis supplied).

10. The factors listed in the referenced CPG are nearly identical to those contained in § 503A. FDA has thus apparently adopted § 503A, conflicting with one or another of the courts that have spoken on the issue.

11. Various states have themselves enacted differing and in some cases conflicting regulations on the practice of pharmacies. Permitted practices in some states may be considered impermissible manufacturing by FDA and other states. Federal standards, if applicable, will preempt state duties where it is impossible for a private party to comply with both state and federal requirements. *Pliva, Inc. v. Mensing*, 564 U.S. ___, 131 S. Ct. 2567 (2011). While NECC maintains that its compounding practices conformed to all applicable standards for compounding pharmacies, a singular and clear interpretation of the relevant federal authority is necessary to properly assess the applicability and interplay of FDA's rules with state regulatory authority.

12. FDA's actions in this matter place this conflict in stark relief. FDA engages in enhanced inspections in response to suspected violations of FDCA provisions, such as in cases of suspected adulteration or misbranding. An enhanced inspection of a compounding pharmacy, including collecting and retaining the pharmacy's records, will be conducted by FDA if it believes the facility does not qualify as a compounding pharmacy. *Med. Ctr. Pharmacy v. Gonzales*, 451 F. Supp. 2d 854, 866 (W.D. Tex. 2006), *vacated on other grounds sub nom. Med. Ctr. Pharmacy v. Mukasey*, 536 F.3d 383 (5th Cir. 2008). In collecting NECC's records, FDA has signaled its interpretation of the activities and circumstances alleged in these cases to have

exceeded compounding pharmacy exemptions, thus constituting unlawful manufacturing and warranting federal enforcement action. *See* FDA 483 Inspection Report, issued 10/26/12, *available at* http://www.fda.gov/downloads/AboutFDA/CentersOffices/OfficeofGlobalRegulatoryOperations andPolicy/ORA/ORAElectronicReadingRoom/UCM325980.pdf (last visited Nov. 1, 2012).

13. Only the experience and authority of the federal courts, acting in a coordinated manner, can provide the clarity and consistency necessary to properly and equitably adjudicate these vexing legal issues. While the circumstances presented are unique, the issues raised are not uncommon and must be decided. Indeed, the Judicial Panel on Multidistrict Litigation ("JPML") is already considering an application to centralize and transfer all matters arising from these circumstances to a single District Court. (NECC Notice of Appearance in MDL 2419, Exhibit B). It is anticipated that JPML will rule on the application to establish MDL 2419 within the next two to four months, likely soon after the hearing scheduled to be held in Orlando, Florida on January 31, 2013. Defendants anticipate that the application will be granted and this matter will be transferred to an assigned District Court for further pretrial proceedings.

14. Removal of this action to this Court is also permissible under the provisions of 28 U.S.C. § 1441 because the Court has diversity jurisdiction over the subject matter of all claims, pursuant to 28 U.S.C. § 1332 inasmuch as (1) the suit is between citizens of different states, and (2) upon information and belief the amount in controversy is $75,000 or more, exclusive of costs and interest.

15. Plaintiff is a citizen of the state of Michigan. (Compl. ¶ 4).

16. NECC is a Massachusetts corporation.

17. Upon information and belief, ARL Bio Pharma, Inc. is an Oklahoma corporation.

18. Ameridose LLC is a Massachusetts limited liability company.

19. Medical Sales Management, Inc. is a Massachusetts corporation.

20. Barry J. Cadden is a citizen of the state of Massachusetts.

21. The Complaint does not allege that Plaintiff is a resident of Massachusetts, nor does it allege any connection to the state. Accordingly, there is total diversity between Plaintiff and Defendants as required by 28 U.S.C. § 1332(a).

22. Upon information and belief, ARL Bio Pharma, Inc. has not been served with process and has not appeared by counsel. Defendants therefore need not and could not obtain consent of this party.

23. Accordingly, this Court has jurisdiction over this civil action based upon 28 U.S.C. §§ 1331 and 1332.

24. In accordance with 28 U.S.C. § 1446(d), written notice of the filing of this removal notice will be given to Plaintiff and will be filed with the Clerk of Courts for the Commonwealth of Massachusetts, Middlesex Superior Court, following the filing of this Notice.

WHEREFORE, Defendants respectfully request that the action now pending against them in the Middlesex Superior Court for the Commonwealth of Massachusetts be removed to the United States District Court for the District of Massachusetts.

Respectfully submitted,

Defendants New England Compounding Pharmacy, Inc., Ameridose LLC, Medical Sales Management, Inc., and Barry J. Cadden

By their Attorneys,

/s/ Daniel E. Tranen
Geoffrey M. Coan, BBO # 641998
Daniel E. Tranen, BBO # 675240
Hinshaw & Culbertson LLP
28 State Street, 24th Floor
Boston, MA 02109-1775

Date:   November 14, 2012          Tel: (617)213-7000 / Fax: (617)213-7001

## CERTIFICATE OF SERVICE

I, Daniel Tranen, hereby certify that on this 14th day of November, 2012, the documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and I served a true and accurate copy of the foregoing document to counsel of record via first class mail as follows:

Fredric L. Ellis
Edward D. Rapacki
Joseph M. Makalusky
Ellis & Rapacki LLP
85 Merrimac Street, Suite 500
Boston, MA 02114

J. Douglas Peters
Charfoos & Christensen, P.C.
5510 Woodward Avenue
Detroit, MI 48202

/s/ Daniel E. Tranen
Daniel Tranen